UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | )  |                        |
|---|---|---|
| Anthony Alenci, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil No. 19-12244-LTS |
| | ) | |
| Hometown American Management, LLC et al., | ) ) | |
| | ) | |
| Defendants. | ) ) | |

ORDER ON DEFENDANTS' MOTION TO DISMISS (DOC. NO. 15)

May 15, 2020

SOROKIN, J.

On November 1, 2019 Anthony Alenci filed a six-count First Amended Complaint ("Complaint") on behalf of himself and a proposed class composed of similarly situated residents of the manufactured housing community in which Alenci lives. Doc. No. 9. The Complaint alleges that the defendants, Hometown American Management, LLC and its affiliates (collectively, "Hometown"), charged Alenci and other residents of the community for water in violation of various laws as well as the governing contract. Id. ¶¶ 25-28. Hometown moved to dismiss the Complaint in its entirety. Doc. No. 15. Alenci opposed the motion and cross-moved for partial summary judgment. Doc. No. 21. Hometown and Alenci then submitted reply and sur-reply briefs, respectively, regarding only the motion to dismiss. Doc. Nos. 26, 32. Briefing on the cross-motion for summary judgment awaits further order of the Court. Doc. No. 40. The Court heard oral argument on the motion to dismiss on May 6, 2020, Doc. No. 39, and received supplemental post-argument submissions from the parties, Doc. Nos. 44-46.

For the reasons set forth below, the Court ALLOWS Hometown's motion and DISMISSES the Complaint.

I. BACKGROUND[1]

Alenci resides at Oak Point, a manufactured housing community in Middleborough, Massachusetts for individuals who are at least fifty-five years old. Doc. No. 9 ¶¶ 2-3, 7. Hometown owns and operates Oak Point. Id. ¶¶ 3, 4. Alenci owns his manufactured home, as do the other residents of Oak Point, but he, like the other residents, rents his home site from Hometown pursuant to a written agreement. Id. ¶ 10.

The written agreement requires each resident to pay monthly rent for the home site, and it "separately requires each resident to pay for all utilities and utility services which are separately metered at the [h]ome [s]ite." Id. ¶ 11. In addition, the written agreement obligates Hometown to maintain lawns and landscaping at the home sites and in other community spaces. Id. ¶¶ 12, 43.

The water at Oak Point is metered individually at each home site, and the Town of Middleborough bills Alenci and the other residents directly and individually for water usage. Id. ¶¶ 15-17. As a result of this arrangement, Oak Point residents are subject to late fees imposed by the Town of Middleborough, and residents allegedly pay for water used by lawn irrigation systems installed at each home site. Id. ¶¶ 19-20. Alenci's claims in this action challenge the legality of this method of water supply, which has been in place for decades. Id. ¶¶ 18, 25-67.

II. LEGAL STANDARDS

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient factual allegations to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). In evaluating a pleading under this standard, a court must accept all factual

---

[1] The Court draws these facts from the non-conclusory allegations set forth in the Complaint.

allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993). A court need not credit bald assertions or empty conclusions. Guilfoile v. Shields, 913 F.3d 178, 186 (1st Cir. 2019). To that end, "threadbare recitals of the elements of a cause of action, supported by mere conclusory evidence, do not suffice" to survive a motion to dismiss. Iqbal, 556 U.S. at 678. Dismissal is appropriate where the complaint does not set forth factual allegations, either direct or inferential, respecting each element necessary for recovery under some actionable legal theory. Guilfoile, 913 F.3d at 186 (quoting U.S. ex rel. Hutcheson v. Blackstone Med., Inc., 647 F.3d 377, 384 (1st Cir. 2011)).

III.   DISCUSSION

Alenci's Complaint alleges six claims: Count I asserts that Massachusetts law requires Hometown to supply and to pay for water for all Oak Point residents; Count II asserts that Hometown's water metering practices violate the Massachusetts Consumer Protection Statute ("Chapter 93A"); Count III asserts that Hometown's water metering practices breach the written agreement governing the relationship between Hometown and all Oak Point residents; Count IV asserts that a Massachusetts statute governing landlords' responsibility to provide water to tenants prohibits Hometown's metering and fee practices; Count V asserts that Hometown is unjustly enriched by its failure to pay for residents' water; and Count VI asserts Alenci is entitled to injunctive relief.  Doc. No. 9 ¶¶ 24-67.

As explained below, none of Alenci's claims survive a Rule 12(b)(6) analysis.

   A.   Hometown is Not Required by Law to Supply and Pay for Water

Alenci suggests two sources for Hometown's obligation to pay for water supplied to the home sites: the Massachusetts Sanitary Code, and the regulations promulgated under the Massachusetts Manufactured Housing Act ("MHA"). According to Alenci, both the Sanitary

Code and the MHA regulations require Hometown to both provide water to its residents and pay for it.

The MHA governs the unique relationship between manufactured housing park operators and their residents. <u>See generally</u> Mass. Gen. Laws ch. 140, §§ 32A-32S. It has been amended several times since the earliest version of it was enacted in 1939, including in 1993, when the Commonwealth vested in its Attorney General authority to promulgate regulations deemed necessary for the MHA's enforcement. <u>See</u> <u>Craw v. Hometown Am., LLC</u>, No. 18-cv-12149, 2019 WL 1298588, at *3 (D. Mass. Mar. 21, 2019) (citing Mass. Gen. Laws ch. 140 § 32S, 1993 Mass. Acts 145). In 1996, the Attorney General issued regulations which, in relevant part, remain unchanged today. <u>Id.</u>; <u>see</u> Office of the Att'y Gen. of Mass., <u>The Attorney General's Guide to Manufactured Housing Community Law</u> (2017) [hereinafter "<u>AG Guide</u>"].[2] The MHA regulations work in tandem with the Sanitary Code, which predated the regulations by two decades, and clarify which aspects of the Sanitary Code apply in the context of manufactured housing communities. <u>See</u> <u>Craw</u>, 2019 WL 1298588, at *3, *8-9; <u>see also, e.g.</u>, <u>AG Guide</u> at 21, 46, 49-50 (noting instances where the Sanitary Code applies to manufactured housing).

The MHA regulations require "an operator [of a manufactured housing community to] supply and pay for . . . a supply of potable water sufficient in quantity and pressure to meet the ordinary needs of the residents, connected with a public water supply system" for "each manufactured home site." 940 Mass. Code Regs. 10.05(4)(b)(1) (2020). This regulatory requirement mirrors the obligation imposed by the Sanitary Code on owners of such communities to supply potable water. 105 Mass. Code Regs. 410.180; <u>see</u> 105 Mass. Code Regs.

---

[2] The <u>AG Guide</u> is available in .pdf form on the Commonwealth's website, at http://www.mass.gov/files/documents/2017/11/13/MHC%20Guidebook%20%28Nov%202017%29.pdf (last visited May 13, 2020).

410.020 (defining "owner" to include owners and operators of "mobile home park[s]"). The MHA regulations further provide that "[r]esidents shall not be required to pay charges for hook-up and use of basic utilities," including water. 940 Mass. Code Regs. 10.05(4)(e); see id. at 10.05(4)(a), (b).

However, the MHA regulations specify that the above-described universal obligation to provide and to pay for water for residents applies "except that use charges may be imposed and determined by metering at a manufactured home site by a utility or utilities." Id. at 10.05(4)(e) (emphasis added). With this language, the MHA regulations provide an exception to the general rule obligating an owner to supply water.[3]

---

[3] In an amicus brief filed in Layes v. RHP Props., Inc., No. 18-P-218 (Mass. App. Ct.), the Attorney General for the Commonwealth stated that her manufactured housing regulations "provide one exception [to the owner's obligation to pay for the five basic utilities listed in 940 Mass. Code Regs. 10.05] relating only to [the] owners' obligation to pay for three of the listed basic utilities," and she identified 940 Mass. Code Regs. 10.05(4)(b)(3) as that exception. Doc. No. 44 at 18. From this, Alenci contends that the Attorney General has rejected Hometown's reading of subsection (4)(e), and that the Court ought defer to the interpretation he claims is advanced in the Attorney General's amicus brief. The amicus brief, however, fails to support that view. In fact, it is entirely consistent with the interpretation the Court has endorsed above.

The statement upon which Alenci relies was made in the context of a case concerning whether a manufactured housing park operator bore the obligation to maintain heating oil storage tanks. The exception the Attorney General discussed in her amicus brief was one specifically aimed at heating fuel utilities. 940 Mass. Code Regs. 10.05(4)(b)(3). At no point did the Attorney General interpret, discuss, or even refer to the separate exception at issue here, id. at 10.05(e), so the Court need not address the question of whether deference would be owed to a statement made in an amicus brief signed by an Assistant Attorney General and filed in a case factually and legally distinct from this one.

Moreover, the amicus brief elsewhere quotes a portion of the AG Guide explaining that operators may not charge residents for "required utilities includ[ing] drinkable water . . . unless the utility is individually metered and [the] occupancy agreement provides for such a charge." Doc. No. 44 at 32 (quoting AG Guide at 14). Notably, this quoted provision of the AG Guide cites 940 Mass. Code Regs. 10.05(4) as authority for the proposition that the operator may charge for drinkable water under the described circumstances, providing further support for the Court's interpretation of the relevant regulations here. See Assad v. Longo, 816 N.E.2d 181, *4-5 (Mass. App. Ct. 2004) (unpublished) (reading the same exception the same way); see also Doc. No. 26 at 11 nn.8-9 (collecting decisions of the First Circuit and various sessions of this Court considering unpublished state-court opinions).

Here, the exception to Hometown's obligation applies. The allegations of the Complaint make plain that the Town of Middleborough supplies water directly to Alenci (and to each resident) and bills Alenci (and each resident) directly. Doc. No. 9 ¶¶ 15-16, 19. Moreover, the Complaint alleges that water usage is determined and billed based on meters installed for each home site at Oak Point, and that this "arrangement has been in place for decades." Id. ¶¶ 17-18. Because this "arrangement" as described in the Complaint falls squarely within the plain language of the exception quoted above, Alenci has failed in Count I to state a claim for violation the MHA regulations.[4]

Alenci also urges that Count I alleges a violation of the Sanitary Code provision requiring owners of manufactured housing communities to "provide, for the occupant of every dwelling, . . . a supply of potable water sufficient in quantity and pressure to meet the ordinary needs of the occupant, connected with the public water supply system."[5] 105 Mass. Code Regs. 410.180 (2020). At first blush, this regulation might appear to protect Alenci—as an "occupant" of a "dwelling" of which Hometown is the "owner"—but it does not.

The Sanitary Code is the product of regulations promulgated by the Massachusetts Department of Public Health pursuant to a 1965 statute. See Craw, 2019 WL 1298588, at *2 (discussing the history of the Sanitary Code). These regulations appear in Title 105, Chapter 410

---

[4] Alenci suggests that the exception in 10.05(4)(e) applies only to heating fuels and does not extend to water, citing the separate exception in 10.05(4)(b)(3). That reading ignores the plain language of the regulations. The (4)(e) exception expressly applies to "basic utilities described in" (4)(b), which expressly includes "potable water" in (4)(b)(1). Further, the parameters of the exceptions are different, with (4)(b)(3) essentially allowing for submetering of heat-related utilities with billing by the operator itself, and (4)(e) allowing for direct metering and billing of all utilities (including water) only by the utility company.

[5] This section also regulates owners that provide water through submetering in accordance with Mass. Gen. Laws ch. 186, §22. As explained below, the submetering statute does not apply, rendering this portion of the regulation inapplicable. See § III(C), infra.

of the Code of Massachusetts Regulations, and the relevant sections remain substantially unchanged since their publication in 1969. Id. In general, the provisions of the Sanitary Code relevant here outline landlords' and community owners' obligations to keep their leased premises sanitary and habitable. They apply broadly to property owners and operators. Though they extend to manufactured housing communities as well, they are not tailored to the circumstances presented in such communities. The MHA and its implementing regulations, on the other hand, are laws specifically targeted at manufactured housing communities. They post-date the Sanitary Code. And, most notably, though they impose the same general water obligation included in the Sanitary Code, they do so with an exception crafted for the unique manufactured-housing-community setting. 940 Mass. Code Regs. 10.05(4)(e).

In the particular circumstances presented by Alenci and the claim he describes in Count I, the Court concludes that the more specific MHA regulations control. A well-established canon of statutory interpretation holds that, "if a general statute and a specific statute cannot be reconciled, the general statute must yield to the specific statute." Alliance to Protect Nantucket Sound, Inc. v. Dep't of Pub. Utils., 959 N.E.2d 413, 429 (Mass. 2011) (quotation marks omitted). "This is particularly true if the specific statute was enacted after the more general statute." Id.; accord Wing v. Comm'r of Prob., 43 N.E.3d 286, 291 (Mass. 2015). These principles apply equally to interpretation of regulations and other laws. Applying them here confirms that the exception to the water obligation established by the Attorney General in the MHA regulations supersedes the Sanitary Code's general obligation in the specific circumstances presented by Alenci.

Accordingly, the Motion to Dismiss is ALLOWED as to Count I.

B.     Hometown Has Not Breached the Written Agreement

In Count III, Alenci claims Hometown's water metering practices breach his written occupancy agreement.[6] Doc. No. 9 ¶¶ 40-45. For a breach-of-contract claim to survive a motion to dismiss under Massachusetts law, a plaintiff "must do more than allege, in conclusory fashion, that the defendant breached the contract"; rather, he must "describ[e], with 'substantial certainty' the specific contractual promise the defendant failed to keep." Brooks v. AIG SunAmerica Life Assurance Co., 480 F.3d 579, 586 (1st Cir. 2007). A plaintiff must "at least" plead facts identifying "who did what to whom, when, where, and why," and explaining "what obligations were imposed on each of the parties by the alleged contract." Higgins v. Town of Concord, 246 F. Supp. 3d 502, 518 (D. Mass. 2017) (quotation marks omitted).

In Massachusetts, interpretation of a contract's terms is a legal question properly resolved by the Court. Allstate Ins. Co. v. Bearce, 589 N.E.2d 1235, 1238 (Mass. 1992). Absent breach, "an unambiguous agreement must be enforced according to its terms." Schwanbeck v. Federal-Mogul Corp., 592 N.E.2d 1289, 1292 (Mass. 1992). Longstanding principles of contract interpretation—generally, and under Massachusetts law—require that "[s]pecific terms are given greater weight than general language," In re 604 Columbus Ave. Realty Tr., 968 F.2d 1332, 1357 (1st Cir. 1992), and that individual provisions are interpreted "within the context of the contract as a whole, rather than in isolation," Barclays Bank PLC v. Poynter, 710 F.3d 16, 21 (1st Cir. 2013).

The Complaint does not allege breach of a specific provision of Alenci's written occupancy agreement. Rather, Alenci alleges that Hometown "is obligated by the terms of [the

---

[6] The Court will address Count II, which arises under Chapter 93A, after resolving Alenci's other substantive claims, as the 93A claim turns in large part on the plausibility of the other claims.

agreement] to maintain the lawns and landscaping of each Home Site." Doc. No. 9 ¶ 43. "Accordingly," alleges Alenci, Hometown's "requirement that [Alenci] . . . pay separately for all water usage, including lawn watering, is in breach of that contract." Id. ¶ 44. These allegations fail to plausibly state a claim that Hometown has breached its written occupancy agreements.

The written agreement states: "The Home Owner will pay for all utilities and utility services which are separately metered at the Home Site or otherwise billed directly to the Home Owner by a party other than Oak Point." Doc. No. 16-2 ¶ 7(A).[7] It further provides that Hometown "agrees . . . to maintain common areas and home sites, lawns and landscaping (provided, however, that additional gardens or plantings installed by any home owner shall be maintained by that home owner)." Id. ¶ 9(B). Alenci alleges that the irrigation system used to water the lawn at his home site is connected to his site's water meter and, therefore, he is required to pay for the water it uses. Doc. No. 9 ¶ 20. According to Alenci, this violates the provision of the agreement requiring Hometown to "maintain . . . lawns and landscaping." The Court disagrees.

Reading the agreement as a whole, the circumstances Alenci alleges—Hometown provides and operates an irrigation system to "maintain" the lawn at Alenci's home site, while Alenci pays for the water used at his home site as a "utility service" that is "separately metered" and "billed directly" to him—are precisely what the plain language of the agreement contemplates. Hometown's general obligation to "maintain" does not necessarily—and, in this case, expressly does not—include the narrower obligation to pay for water. The Court will not

---

[7] On a motion to dismiss, courts may consider documents attached to the parties' filings—especially where the documents are referenced in the complaint and central to the plaintiff's claim—provided their authenticity is undisputed. Watterson v. Page, 987 F.2d 1, 3-4 (1st Cir. 1993).

read the more general provision describing what Hometown must "maintain" to contradict or supersede the more specific provision requiring Alenci to pay for water supplied to and metered at his home site. Absent facts either suggesting that the irrigation system violates another specific provision of the agreement or alleging with "substantial certainty" that Hometown has failed to honor its obligations, Alenci's contract claim must fail.[8]

Alenci separately claims the provision imposing water charges on residents is unenforceable because it violates the law. Doc. No. 9 ¶ 42. As noted above with respect to Count I, Hometown is not legally obligated to provide water free of charge. Therefore, this provision of the written agreement is not unlawful and, therefore, is enforceable according to its terms.

Accordingly, the Motion to Dismiss is ALLOWED as to Count III.

C.   Direct Metering by Water Utilities Is Permitted

Alenci alleges in Count IV a violation of a specific provision of Massachusetts law applicable to landlord-tenant relationships (Mass. Gen. Laws ch. 186, § 14). Doc. No. 9 ¶¶ 46-50. In his briefs, Alenci alternately relies on the Massachusetts statute governing landlords' "submetering" of utilities (Mass. Gen. Laws ch. 186, § 22). Doc. No. 21 at 14. The Court considers and rejects both theories.

Section 14 of Chapter 186 requires "any lessor or landlord of any building or part thereof occupied for dwelling purposes, . . . including a manufactured home or land therefor" to provide water to their tenants where such provision is "required by law or by the express or implied terms of any contract or lease." It punishes any "lessor or landlord" within its reach who, inter alia: "willfully or intentionally fails to furnish such water"; "directly or indirectly interferes with

---

[8] For example, Alenci does not allege that Hometown uses water provided and metered through his home site to "maintain" common areas beyond his site.

the furnishing by another of such" water; or "transfers the responsibility for payment for any utility services to the occupant <u>without his knowledge or consent</u>." Mass. Gen. Laws ch. 186, § 14 (2020) (emphasis added). The plain language of this statute does not itself require a lessor or landlord to provide water. Essentially, absent some additional affirmative legal duty to provide water, lessors of manufactured home sites are simply obligated not to interfere with the separate provision of water by the utility service. Such interference is not alleged here.

As noted above, there is no other legal obligation, either regulatory or contractual, for Hometown to provide water without charge to Alenci. Indeed, the written occupancy agreement Alenci signed states that he, as the resident and manufactured home owner, is responsible for water payments. Doc. No. 16-2 ¶ 7(A). In other words, Hometown transferred the responsibility for water payments to Alenci expressly, with <u>his</u> knowledge and consent. Thus, Alenci has not stated a claim for violation of Section 14 of Chapter 186 under any of the available theories.

In his opposition briefs, Alenci attempts to characterize the direct metering of water at his home site as unlawful "submetering." Doc. No. 21 at 14; <u>cf.</u> Doc. No. 9 ¶¶ 17, 20 (using the term "submeter" but alleging violation of law on that basis). Of course, Alenci cannot advance new legal claims in his opposition papers, and for that reason alone this theory fails. It fares no better on the merits. Massachusetts has a statute specifically governing submetering. It defines "submetering" as "use of a meter by <u>a landlord who receives water from a water company</u>, which meter measures water supplied to a dwelling unit to enable <u>the landlord to charge the tenant of the dwelling unit</u> separately for water usage, or which meter measures water supplied to a common area." Mass. Gen. Laws ch. 186, § 22(a) (2020) (emphasis added). It goes on to outline requirements governing submeter installation and charges imposed pursuant to such a system. <u>Id.</u> §§ 22(b)-(t).

Alenci argues that Hometown violates the submetering statute because it fails to meet the statutory preconditions for submetering. Doc. No. 21 at 14. However, the Complaint is wholly devoid of any factual allegations suggesting or giving rise to a plausible inference that Hometown is "submetering" at all, as that term is defined by state law. Alenci has not alleged Hometown "receives water from a water company" or "charge[s] the tenant[s] . . . for water." That Hometown "owns and maintains the community infrastructure, including but not limited to water and sewage disposal systems," Doc. No. 9 ¶ 14, is not such an allegation. This is especially so where the very next paragraph of the Complaint alleges: "The Town of Middleborough provides Oak Point and its residents with water from its municipal water supply and bills residents directly for water usage." Id. ¶ 15. Thus, Alenci has failed to allege facts plausibly stating that the submetering statute applies, let alone that Hometown has violated it.

Accordingly, the Motion to Dismiss is ALLOWED as to Count IV.

D.      Hometown's Metering Practice Does Not Violate Chapter 93A

In Count II, Alenci alleges that Hometown's requirement that residents pay separately for water usage is an unfair and deceptive practice in violation of Chapter 93A, which is Massachusetts' consumer protection law. Id. ¶¶ 29-39. The foregoing conclusions that Alenci has not stated violations of the various state statutes and regulations he has sought to invoke "makes quick work of [his] Chapter 93A claim[]." Ruiz v. Bally Total Fitness Holding Corp., 496 F.3d 1, 11 (1st Cir. 2007).

Chapter 93A "broadly prohibits 'unfair' and 'deceptive' conduct in trade or commerce." McDermott v. Marcus, Errico, Emmer & Brooks P.C., 775 F.3d 109, 116 (1st Cir. 2014). Determining whether particular conduct implicates Chapter 93A generally occurs on a case-by-case basis, though "violations of a limited number of statutes automatically give rise to liability

under Chapter 93A." Id. at 116-17. To state a Chapter 93A claim, a plaintiff must describe actions by the defendant that fall "within at least the penumbra of some common-law, statutory, or other established concept of unfairness, or were immoral, unethical, oppressive, or unscrupulous, and resulted in substantial injury." Ruiz, 496 F.3d at 11 (quotation marks omitted).

The Complaint's bare assertion that separate billing for water usage is an unfair practice fails to state a claim where, as here, direct metering at each individual home site is permissible under the relevant regulations and statutes. Put simply, Alenci's Chapter 93A claim depends entirely on the alleged violations of the Sanitary Code, the MHA and its regulations, and the submetering statute. Doc. No. 21 at 16-17. He alleges no facts from which it would be reasonable to infer an unfair or deceptive practice by Hometown on any other basis. As such, Alenci's failure to plausibly allege violations of the other state laws he has cited also dooms his Chapter 93A claim.

Accordingly, the Motion to Dismiss is ALLOWED as to Count II.

E.     The Other Counts Also Fail

Two claims remain. Count V seeks to state a claim for unjust enrichment. Doc. No. 9 ¶¶ 51-58. Because Alenci's written occupancy agreement is an enforceable contract governing the conduct at issue and authorizing the challenged behavior by Hometown, unjust enrichment is not an available theory of recovery. See Tomasella v Nestlé USA, Inc., 364 F. Supp. 3d 26, 37 (D. Mass. 2019) ("[U]nder Massachusetts law, a plaintiff who has an adequate remedy at law cannot maintain a parallel claim for unjust enrichment, even if that remedy is not viable."). In any event, the Complaint fails to plausibly allege the elements of unjust enrichment. See id. (listing the elements under Massachusetts law). In particular, Alenci has not plausibly alleged that he has conferred any benefit upon Hometown, which Hometown has accepted under

13

circumstances making such acceptance without payment inequitable. Rather, he has described being charged for the cost of a utility used on his own home site, in a manner consistent with both the terms of a contract he knowingly executed and the various state laws and regulations he has identified in this action.

In Count VI, Alenci seeks injunctive relief. Such relief, however, is not an independent claim, but a remedy. Payton v. Wells Fargo Bank, N.A., No. 12-cv-11540, 2013 WL 782601, at *6 (D. Mass. Feb. 28, 2013).

Accordingly, the Motion to Dismiss is ALLOWED as to Counts V and VI.

IV.   CONCLUSION

One more point bears mention. Anticipating that the Court might not embrace his view of the relevant state laws and regulations, Alenci alternatively requests certification to the Supreme Judicial Court of the question of the proper interpretation of the various statutes and regulations addressed in this decision. Although federal courts have the discretion to certify questions to the Supreme Judicial Court, Richardson v. UPS Store, Inc., No. 18-cv-12338, 2019 WL 2578276, *2 (D. Mass. June 24, 2019), this Court declines to do so here. This decision is narrow and results from a garden-variety application of standard rules of statutory and regulatory construction to unambiguous Massachusetts regulations and statutes.

For the foregoing reasons, Hometown's Motion to Dismiss (Doc. No. 15) is ALLOWED, and Alenci's First Amended Complaint (Doc. No. 9) is DISMISSED. The Clerk shall enter a judgment of dismissal with each side to bear its own costs and fees.

SO ORDERED.

 /s/ Leo T. Sorokin
United States District Judge